**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000005**
**09-NOV-2012**
**08:14 AM**

NO. CAAP-11-0000005

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ENE JENNINGS, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-1040)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendant-Appellant Ene Jennings (Jennings) appeals from the Judgment of Conviction and Sentence entered December 6, 2010, in the Circuit Court of the First Circuit[1] (circuit court). A jury found Jennings guilty on two counts of sexual assault in the fourth degree in violation of Hawaii Revised Statutes (HRS) § 707-733(1)(a) (1993)[2] and he was sentenced to one year of incarceration.

---

[1]  The Honorable Michael D. Wilson presided.

[2]  HRS § 707-733(1)(a) (1993) provides in relevant part:

§707-733  **Sexual assault in the fourth degree.**  (1) A person commits the offense of sexual assault in the fourth degree if:
(a) The person knowingly subjects another person to sexual contact by compulsion or causes another person to have sexual contact with the actor by compulsion[.]

On July 8, 2009, the State of Hawai'i (State) filed a complaint charging Jennings with two counts of sexual assault in the fourth degree and one count of open lewdness stemming from an incident that occurred April 9, 2008 involving Jennings and Complainant Witness (CW). Jennings allegedly masturbated in front of CW then grabbed her breasts and genitalia. CW reported the incident to the Honolulu Police Department (HPD) on April 15, 2008. On July 10, 2008, an HPD police detective (police detective) videotaped CW's statement (videotape).

On appeal, Jennings contends the circuit court erred in:

(1) allowing the police detective's videotape into evidence without redacting inadmissible hearsay and prejudicial elements;

(2) not having the jury view the videotape in open court;

(3) not having the jury view the videotape although it was admitted into evidence; and

(4) not providing the jury with a limiting instruction regarding the limited purpose of the videotape and witness testimony.

## I.

The jury trial commenced April 1, 2010, and during Jennings's cross examination of CW, Jennings sought to introduce portions of the videotape to impeach CW. The State objected. The circuit court advised Jennings to continue questioning CW about the videotape while the circuit court considered whether the videotape would be shown. Jennings continued his cross examination, and at recess, the circuit court advised the State and Jennings to come to an agreement about use of the videotape during trial.

After recess, following a lengthy discussion in which the State and Jennings disagreed as to which portions of the

videotape should be shown to the jury, the circuit court instructed Jennings to continue cross examination, and during the lunch recess,[3] the State and Jennings were to come to an agreement on which portions would be submitted into evidence. After the lunch recess, the cross examination continued with no further discussion of the videotape. Before adjourning for the day, the circuit court instructed the jury regarding the videotape stating: "By stipulation or agreement between the parties, a portion of the [videotape] will be admitted into evidence for your viewing during deliberations."

On the next trial day, Jennings again brought the issue of the videotape before the circuit court, asking to allow the jury to see two portions in the courtroom and objecting to the State's request to allow the entire videotape into evidence. The State contended that both parties reached an agreement to allow the entire videotape to be shown during jury deliberations. After a lengthy discussion, the circuit court agreed to allow the entire videotape into evidence (minus a portion of the videotape that discusses an incident between CW and Jennings's wife) which would be made available to the jury during deliberations.

The record is unclear as to whether the jury viewed the videotape, or any part thereof.[4] The record is also unclear as to whether the circuit court viewed the videotape.

II.

The appellate court applies "two different standards of review in addressing evidentiary issues. Evidentiary rulings are

---

[3] The discussion between Jennings and the State is not on the record.

[4] Jennings and the State agree the record is silent as to what the jury may or may not have viewed. The record contains one jury communication unrelated to the viewing of the videotape. After the circuit court dismissed the jury for deliberation, the circuit court informed Jennings and the State that the bailiff would communicate with the jury to let them know the videotape is available "when and if" they want to review the evidence. The circuit court also clarified that the videotape would remain with the court until such time as the jury requests the bailiff to show the videotape. No such jury communication is in the record.

reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citations omitted).

## III.

Jennings questioned CW regarding her statements on the videotape, and CW denied making the statements or could not recall such statements. The exchange was as follows:

> [Defense counsel]: [L]et's go back to April 15th when you gave your statement. You said that on April 10th, 2008, you confronted Mr. Jennings, right?
>
> [Prosecutor]: Objection, Your Honor. That is not –
>
> The Court: Objection's overruled.
>
> The Interpreter: Yes, that's true because I cannot control my emotions.
>
> [Defense Counsel]: Okay. What you said though is that you confronted him but failed to settle things, right?
>
> [CW]: He apologized to me.
>
> [Defense Counsel]: Hold on right there. My question to you is on April 10th, 2008, you confronted Mr. Jennings trying to settle things?
>
> . . . .
>
> The Interpreter: He told me he was sorry and he asked for an apology.
>
> . . . .
>
> [Defense counsel]: Let's go to April 10th, 2008. You confronted Mr. Jennings, right?
>
> [CW]: Yes.
>
> [Defense counsel]: Okay. And you said - - actually, you say you confronted him in your statement on July 15th. Now on July 10th of 2008, you told [the police detective] that Mr. Jennings told you he was sorry that he didn't pick up your dad, correct?
>
> [CW]: He apologized not for my father, he apologized because of what he did to me.

[Defense Counsel]: Okay. [The police detective] asked you, Sorry about what, right?

[CW]: About what happened to me.

[Defense Counsel]: Okay. And what was your response to him was I don't know, maybe what happened, right?

[CW]: No, he said I'm sorry for what happened yesterday.

[Defense Counsel]: If I were to play you your tape recording interview with [the police detective] from July 10th, 2008, would that be the same to what you just testified?

. . . .

[Defense Counsel]: That's not what you told [the police detective] on July 10th, 2008, correct?

[CW]: I really don't remember because I was so nervous during that time and I can't remember what I said.

. . . .

[Defense Counsel]: And when you described how he was touching you during the interview, you laughed and said my husband was upset when he heard about that, and you laughed, right?

. . . .

The Interpreter: I did not laugh. I was afraid that my husband might construe it that we have a relationship with each other.

[Defense Counsel]: Okay. And, Your Honor, with that, now I would like to introduce that segment of the interview for impeachment purposes.

[Prosecutor]: And, Your Honor, state - - this is improper impeachment. She has noted the question.

The Court: I'll take your request under consideration. And you can proceed.

. . . .

[Defense Counsel]: Okay. And you told [the police detective] that Mr. Jennings didn't hit you, but pretended to hit you, right?

[CW]: He did not hit me but his hand made contact to my face like this.

[Defense Counsel]: Okay. So there was contact?

[CW]: Yes, and we were beside the pickup.

[Defense Counsel]: But you told [the police detective] there was no contact?

5

. . . .

        The Interpreter: I felt the contact but it did not hurt that much.

        [Defense Counsel]: Your Honor, again, I would like to introduce that portion of the statement taped interview with [the police detective] for impeachment purposes.

        [Prosecutor]: And the [State] would be objecting. This is improper impeachment. She answered the question.

        The Court: All right. I'll take your request under advisement to use the videotaped interview; is that correct?

        [Defense Counsel]: Yes, Your Honor.

Jennings argues the jury was presented with prejudicial, inadmissible hearsay on the videotape. Jennings argues the jury should have been shown only the two portions of the videotape relating to CW's impeachment on prior inconsistent statements. The State asserts the completeness doctrine[5] allowed for the entire video to be entered into evidence. The circuit court allowed the entire video into evidence with the redaction of a small portion disclosing an unrelated incident between CW and Jennings's wife.

        Under Hawaii Rules of Evidence (HRE) Rule 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." HRE Rule 106. This evidentiary rule protects the trier of fact from being misled by written or recorded statements taken out of context. Monlux v. General Motors Corp., 68 Haw. 358, 367, 714 P.2d 930, 936 (1986). HRE Rule 106 does not necessarily permit wholesale admission of entire writings or recordings, but allows the court to admit

---

        [5]   The common law doctrine of completeness is codified in HRE Rule 106. Monlux v. General Motors Corp., 68 Haw. 358, 366, 714 P.2d 930, 935 (1986).

additional evidence only as required to prevent the jury from becoming misled.

In State v. Brooks, the accused sought to admit portions of a decedent's testimony, while claiming the confrontation clause prevented the State from including additional portions to put the decedent's statements in context. State v. Brooks, 125 Hawai'i 462, 467, 264 P.3d 40, 45 (2011). For each statement the accused requested to present, the State requested that an additional statement be admitted as well. Id. at 468, 264 P.3d at 46. The State did not seek to have the entire statement offered into evidence, but selected portions necessary to put the decedent's statements into context. Id. Where the additional statement's were necessary to ensure the proper context for the decedent's statements, the circuit court properly allowed the statements into evidence. Id. at 474, 264 P.3d at 52.

Unlike Brooks, the State in this appeal did not request specific additional portions of the videotape to place CW's testimony into context. The circuit court admitted the videotape into evidence with no record as to any review by the circuit court. Jennings objected that the videotape contained inadmissible hearsay. Jennings also objected to the jury viewing the entire videotape as a prejudicial repetition of CW's testimony during direct examination.

In the roughly half hour videotape interview, CW described an incident involving CW's father and Jennings. CW recalled the incident as explained to her by her father. She described how Jennings and another man drove her father around to unfamiliar places, intimidated him and demanded money before driving him home. CW stated, "[m]y father very nervous because of what they do to me. They also took his money . . . but when I went in my father told me that some one guy that I rode with [took or push] me around and Ene." CW said, "[m]y father was

nervous for what they do to him . . . . They were just taking him around after work." CW repeated, "[m]y father was really nervous about what they was doing to him." CW discussed this incident in detail for 7 minutes.

In the videotape, CW also described a conversation she had with her father immediately after the alleged sexual assault. She recalled that she asked her father to call the police, but her father refused, saying Jennings might "kill us."

The police detective asked CW to describe what happened at the time of the alleged sexual assault. CW spoke about the alleged sexual assault for 13 minutes.

Then CW discussed an unrelated incident between herself and Jennings's wife. This 10 minute portion of the videotape with this unrelated incident was to be redacted.

CW concluded the interview by describing an altercation, between herself and Jennings, that occurred the day after the alleged sexual assault. CW discussed this incident for the remaining 3 minutes of the interview.

The only parts of the videotape Jennings was offering into evidence to impeach CW concerned her demeanor when making a statement in the videotape about her husband being upset when learning of the alleged sexual assault, and the altercation between she and Jennings after the incident that concerned an apology and Jennings striking CW on the face. CW's interview as to what her father told her about Jennings and another man driving him around, intimidating him and demanding money was not relevant to the parts of the videotape Jennings offered into evidence. Nor was most of the balance of the videotape when she repeatedly described the alleged sexual assault.

The circuit court erred in allowing the videotape into evidence (over Jennings's objections) without reviewing the videotape, and in not determining which additional portions were necessary to satisfy HRE Rule 106 without unduly prejudicing

Jennings. Evidence in the videotape should not have been admitted or made available to the jury other than what was necessary to prevent the jury from being misled. See State v. Moore, 82 Hawai'i 202, 205, 921 P.2d 122, 145 (1996); State v. Corella, 79 Hawai'i 255, 263-64, 900 P.2d 1322, 1330-31 (App. 1995). Clearly inadmissible and prejudicial portions of the videotape were admitted into evidence that were not necessary to prevent the jury from being misled.

IV.

The Judgment of Conviction and Sentence entered December 6, 2010 in the Circuit Court of the First Circuit is vacated and this case is remanded for a new trial. Because we vacate and remand for a new trial, we do not address Jennings's other points on appeal, as they are moot.

DATED: Honolulu, Hawai'i, November 9, 2012.

On the briefs:

Randal I. Shintani
for Defendant-Appellant.

Presiding Judge

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Associate Judge

Associate Judge